**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CONTROLSOFT, INC.**, an Ohio corporation, 5387 Avion Park Drive, Highland Heights, Ohio 44143,<br><br>    Plaintiff,<br><br>  v.<br><br>**THE DOW CHEMICAL COMPANY**, a Delaware corporation, 2030 Dow Center, Midland, Michigan 48674,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **COMPLAINT** |

Plaintiff ControlSoft, Inc. ("ControlSoft"), for its complaint against Defendant The Dow Chemical Company ("Dow") alleges, and states as follows:

**Nature of the Case and Background**

1. This action arises from Dow's unlawful exploitation of ControlSoft's confidential information and copyrighted computer program, which Dow misappropriated to develop a software product that is a direct replacement for ControlSoft's computer program.

2. ControlSoft's computer program at issue is called MANTRA. MANTRA is an industry-leading advanced process control ("APC") system for controlling industrial manufacturing facilities. ControlSoft released MANTRA in 1998.

3. Beginning in 2001, Dow purchased a license to use ControlSoft's MANTRA software in Dow-owned plants and plants owned by licensees of certain Dow technology. Around the same time, ControlSoft and Dow executed a series of contracts under which ControlSoft developed modifications to MANTRA and additional software code specific to Dow processes so that MANTRA could integrate and execute certain of Dow's legacy process control software code.

4.     The nature of custom development work and the contracts to implement required that Dow and ControlSoft work closely together to develop and implement the modifications to MANTRA and the additional software code specific to Dow processes. In doing that—over a course of nearly 20 years—ControlSoft engineers worked hand-in-hand with Dow. This entailed the transmission of a great deal of ControlSoft's confidential and trade secret information concerning MANTRA and its inner workings to Dow—information Dow was expressly required, under a non-disclosure agreement, to use only with ControlSoft's authorization and on ControlSoft's behalf.

5.     But rather than respecting ControlSoft's contractual and intellectual property rights, Dow improperly used ControlSoft's confidential information and copyrighted software to develop its own software platform, Syrinx, that is a direct replacement for ControlSoft's MANTRA software. Rather than build its own software product from the ground up—as ControlSoft did—Dow willfully and maliciously exploited ControlSoft's protected confidential information and intellectual property to facilitate Dow's conversion of MANTRA-controlled plants to Syrinx-controlled plants, to ControlSoft's injury. ControlSoft therefore brings this action for breach of contract, misappropriation of trade secrets, and copyright infringement, against Dow.

## Parties

6.     ControlSoft Inc. is a privately held Ohio corporation with its principal place of business in Highland Heights, Ohio.

7.     The Dow Chemical Company is a Delaware corporation with its principal place of business in Midland, Michigan and is a unit of Dow Inc., traded on the New York Stock Exchange.

14159703.2

## Jurisdiction and Venue

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties.

9.      In addition, this Court has exclusive subject matter jurisdiction over ControlSoft's copyright claim pursuant to 28 U.S.C. § 1338(a).

10.     In addition, this Court has original subject matter jurisdiction over ControlSoft's misappropriation of trade secrets claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

11.     This Court also has subject matter jurisdiction over ControlSoft's misappropriation of trade secrets claim under the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61 *et seq.* pursuant to 28 U.S.C. § 1338(b), as that claim is joined with ControlSoft's substantial and related claim against Dow brought under the Defend Trade Secrets Act and federal copyright law.

12.     Finally, this Court has supplemental subject matter jurisdiction over ControlSoft's claims for breach of contract under 28 U.S.C. § 1337(a) because such claims are so related to ControlSoft's claims for copyright infringement and trade secret misappropriation that they form part of the same case or controversy under Article III of the United States Constitution.

13.     This Court has personal jurisdiction over Defendant Dow because this action arises from Dow transacting business in the State of Ohio, causing tortious injury in the State of Ohio, and otherwise purposefully directing its activity toward ControlSoft, a privately held corporation located in the State of Ohio.  Further, upon information and belief, Dow owns and operates one or more facilities in the State of Ohio, including The Dow Chemical Company in Dayton located at 555 Gaddis Blvd.; Dayton, Oh 45403.

14159703.2

14.     Venue is proper in this District because a substantial part of the events giving rise to this action occurred in this District.

<u>**Factual Allegations**</u>

**A.     ControlSoft and Its MANTRA Software.**

15.     ControlSoft is an Ohio-based technology company that was originally formed to help commercialize technology developed by Case Western Reserve University and its faculty members.  ControlSoft, and its Ohio based developers and engineers, now specialize in the design and implementation of advanced process control ("APC") systems. ControlSoft creates industry-leading APC software for a variety of applications, including materials manufacturing, then comprehensively assists its customers in implementing that software. ControlSoft was founded more than 36 years ago and has steadily grown to become the successful industry mainstay it is today, providing highly advanced APC systems.

16.     Dow is a multinational chemical company and one of the largest manufacturers of plastics, chemicals, and agricultural products in the world. Dow has a presence in 160 countries and more than 54,000 employees. Each year, it generates billions of dollars in revenue.

17.     Univation is a wholly owned subsidiary of Dow.  Univation commercialized Dow's UNIPOL technology by licensing and supporting third party manufacturers.

18.     Atlas is a third-party engineering contracting firm.  Atlas bills itself as an APC consultancy for the chemical industry.  On information and belief, Dow and/or Univation have retained Atlas to perform services relating to the development, deployment, and maintenance of Syrinx at UNIPOL licensee facilities.

19.     One of ControlSoft's software products is MANTRA, an APC computer program designed to control manufacturing functions on a plant-wide basis. When deployed at a

manufacturing plant, MANTRA enables engineers staffed at the plant to control plant processes efficiently, precisely, and intuitively.

20.     ControlSoft owns the copyright to its off-the-shelf MANTRA software. ControlSoft's copyright in MANTRA encompasses not only literal software elements—i.e., the computer program itself—but also non-literal software elements that the computer program generates, including MANTRA's internal architecture and organization, and user interface.

**B.     The End User License Agreement (EULA).**

21.     In 2001, Dow purchased from ControlSoft a license to use ControlSoft's off-the-shelf MANTRA product. While MANTRA has many applications, Dow sought to use MANTRA to control its UNIPOL process. UNIPOL is a proprietary Dow process for manufacturing two popular types of plastics: polyethylene and polypropylene.

22.     The terms and conditions under which Dow entered into a license for the use of MANTRA are set forth in an End User License Agreement (the "EULA"). A true and correct copy of the EULA is attached hereto as Exhibit A. A copy of the EULA is included in each distribution of MANTRA by ControlSoft. By installing and using MANTRA, Dow agreed to and entered into the EULA.

23.     The EULA is a valid and enforceable contract that is binding upon Dow and ControlSoft.

24.     Each EULA entered into granted Dow a nonexclusive license to use MANTRA on one computer. *Id.* § 1.

25.     Through the EULA, ControlSoft licensed to Dow its MANTRA software; but ControlSoft retained its ownership of and intellectual property rights, including its copyrights, in the MANTRA software. *See id.* § 4.

14159703.2

26.     The EULA contained express limitations on Dow's right to use and copy the MANTRA software, including the following:

> Except as specifically permitted in this Agreement, you [Dow] may not (i) copy the Software or this manual, (ii) modify the Software or separate out any of its components for use with other software (except to the extent contemplated in the enclosed user documentation), . . . or (iv) decompile, disassemble, or otherwise reverse engineer the Software.

*Id.* § 1.

27.     In the EULA, Dow "acknowledge[d] that the [MANTRA] Software includes or incorporates proprietary and confidential information belonging to ControlSoft and/or its licensors." *Id.* § 4. By the same provision, ControlSoft reserved all rights not expressly granted to Dow in the EULA. *Id.*

**C.     The Master Service Agreement (MSA) and Related Contracts.**

28.     Dow had its own internal suite of APC software for the UNIPOL process, but its APC software was not compatible with the Windows NT operating environment. Dow desired to migrate the functionality of its own preexisting APC to the Windows NT environment.

29.     MANTRA was the software through which Dow sought to accomplish this. Advantageously, MANTRA already ran on Windows NT and had an advanced graphical control programming environment. However, without alterations it could not load or run Dow's internal suite of APC software. For Dow to migrate its APC to a Windows NT environment successfully, MANTRA's core operating system (its "kernel") would have to be modified and additional code would have to be written to make Dow's APC executable by MANTRA.

30.     With this goal in mind, in late 2001 and early 2002, ControlSoft and Dow executed several agreements in connection with the same transaction, including the Master Project Services

Agreement (the "MSA"), the Commercial Terms Agreement (the "CTA")[1], the Statement of Work ("SOW"), and the Nondisclosure Agreement for ControlSoft Confidential Information (the "NDA").

31. A true and correct copy of the MSA is attached hereto as Exhibit B.

32. A true and correct copy of the SOW is attached hereto as Exhibit C.

33. A true and correct copy of the NDA is attached hereto as Exhibit D.

34. The work to be performed by the parties in carrying out this transaction was defined in the SOW. *See* Ex. C, SOW. The SOW tasked ControlSoft with preparing deliverables for Dow, which in "Step 1" (as defined in the SOW) included the following tasks, among others:

   a. Building a dynamic link library ("DLL") for one of Dow's APC routines, which would allow the routine to run on MANTRA once;

   b. Altering the kernel for MANTRA to enable it to load the additional DLL; and

   c. Developing a user interface to work with Dow's APC routine.

*Id.* § 1.3. Additionally, Dow stated in the SOW that while doing this, "Dow wants to retain the common blocks and file input/output to the greatest extent possible within the MANTRA environment." *Id.* § 1.2. ControlSoft developed the common blocks and file input/output that Dow desired outside of, and before entering into, the agreements in Exhibit B through Exhibit D.

35. In Step 2 of the project, ControlSoft would be tasked with, among other things, building "wrappers" for not only the Dow APC routine from Step 1 but for 34 additional Dow APC routines. *Id.* § 1.3. These "wrappers" were another form of software necessary to enable MANTRA to load and run Dow's APC routines.

---

[1] To avoid disclosure of confidential pricing terms the CTA has not been attached to the Complaint.

14159703.2

36.     The MSA and its related contracts were more than a mere agreement to develop and sell custom software, however. They expressly required a longstanding "close working relationship" between ControlSoft and Dow, and defined a suite of services to be provided by the parties to ensure that the necessary custom software was not only coded but also successfully integrated into Dow's plants. *See id.* Accordingly, the SOW contained many requirements that Dow provide ControlSoft with the assistance it would need to create its deliverables under the agreement. In addition, ControlSoft was to integrate and test the software at Dow once it was created, and was responsible for maintaining the MANTRA database on a going-forward basis, a task requiring ControlSoft to service Dow's MANTRA-integrated plants on an ongoing basis. The agreements also called for ControlSoft to perform an estimated 300 hours of consulting work to ensure the successful completion of the project.

37.     Importantly, while the MSA provided Dow with certain additional rights to the deliverables developed under that agreement, it granted Dow *no* rights to ControlSoft's preexisting MANTRA computer program or enhancements to that computer program.

38.     That is, the MSA provided that Dow would own the information, technology and software, including all intellectual property rights, to the "deliverable products and software provided by CONTROLSOFT to DOW under [the MSA]"—though only to the extent such deliverables were based upon Dow proprietary information and technology and did not constitute enhancement or derivative works of ControlSoft's commercial MANTRA software. Ex. B, MSA §§ 2.15.1, 2.15.4; *id.* § 1.1.3; Ex. C, SOW § 1.3.

39.     Moreover, the MSA provided that ControlSoft would retain ownership over other assets, including: (a) its own proprietary and confidential information, and all intellectual property rights therein; and (b) all software constituting a derivative work of ControlSoft's technology and

8

commercial software (including MANTRA), to the extent such technology and software does not contain Dow proprietary information, technology or software. Ex. B, MSA § 2.15.2.

40.     Thus, by the express terms of the MSA, ControlSoft retained ownership of the base MANTRA software, and all technology and intellectual property rights therein, including derivative works based upon and enhancements to that base MANTRA software, to the extent such assets were not created as a deliverable under the MSA and did not contain Dow's proprietary information, technology or software.

41.     The MSA and SOW contemplated that, apart from the deliverables ControlSoft was to develop under the MSA, Dow would also need a license to ControlSoft's off-the-shelf MANTRA software. The SOW thus granted Dow four discounted licenses to ControlSoft's standard MANTRA software. Ex. C, SOW § 1.3. However, the MSA provided that this license proposed in the SOW would be provided not under the MSA but "under applicable terms of a separate software license agreement between DOW and CONTROLSOFT." Ex. B, MSA § 1.4.6; *see also id.* § 2.15.4.

42.     That "separate software license agreement" was the EULA, which, even after the execution of the MSA, continued to govern ControlSoft's license of its off-the-shelf MANTRA software to Dow, and any enhancements to and derivative works of that software.

**D.     The NDA and ControlSoft Confidential Information.**

43.     Concurrently with the MSA, ControlSoft and Dow executed the NDA, the purpose of which was to protect the confidential and proprietary information ControlSoft would have to disclose to Dow for the parties to coordinate their efforts closely under the MSA.

44.     The NDA defined "Confidential Information" as:

[A]ll technical and business information provided directly or indirectly by ControlSoft and/or its Affiliates to Dow and/or its Affiliates which bears a

9

proprietary or confidential or restricted or controlled marking of any type or which is contained in an unmarked document or is orally disclosed and is of a nature which the recipient would reasonably understand is information the disclosing party would not wish to be disclosed to its competitor or to any third party [subject to some enumerated exceptions].

Ex. D, NDA § 1.

45.     The NDA required Dow to "take all such precautions as are reasonable to prevent Confidential Information from being disclosed to or used or copied by any person except those of its employees and contractors having a need to have the information as a part of their work duties related to" the NDA. *Id.* § 2.

46.     The NDA prohibited Dow from disclosing ControlSoft's Confidential Information to any third party, such as a competing software engineering firm, without ControlSoft's advance written permission, and even then permitted such disclosure only if the third-party executed a nondisclosure agreement with terms no less strict than those of the NDA. *Id.*

47.     The NDA obligated Dow "not to use Confidential Information except as authorized by ControlSoft and on ControlSoft's . . . behalf." *Id.*

48.     Throughout the course of Dow and ControlSoft's relationship, ControlSoft continuously imparted Confidential Information to Dow concerning its MANTRA Software, up to when ControlSoft discovered Dow's unauthorized misappropriation of certain programming elements set forth below and Dow's true intentions for its use of Syrinx. Up until that time, through the parties' ongoing collaborative relationship, ControlSoft provided Dow with access to nearly every part of its MANTRA software, including its internal architecture and organization, its user interface, and logic block execution. In addition, ControlSoft, on an ongoing basis, provided Dow and its employees with confidential and proprietary information relating to the implementation of

14159703.2

Dow's APC with MANTRA. This confidential information is not found or capable of being derived from publicly accessible information, such as user documentation.

49.     Despite the trust that ControlSoft had in Dow, and Dow's commitments under the NDA, ControlSoft never shared certain trade secret information with Dow.  For example, for every installation a MANTRA project is stored in a database file with a ".MPJ" filename extension.  All MANTRA MPJ database files are secured with access credentials assigned by ControlSoft and maintained by ControlSoft in secrecy.  ControlSoft provides the access credentials only to its own personnel within ControlSoft who have a need to access the files to perform their work duties. ControlSoft does not share the access credentials with its licensees.  In particular, ControlSoft did not provide Dow with the access credentials, nor did ControlSoft authorize Dow to open, inspect, or reverse engineer the data structures within a MANTRA project MPJ database file.

**E.     Dow Used ControlSoft's Confidential Information, and Copied Protected Elements of MANTRA, to Develop a Direct Replacement for MANTRA.**

50.     In January 2017, Dow Research & Development Manager Dan Thomas ("Thomas") asked ControlSoft if Dow could use ControlSoft employees as contractors to help develop another APC called Syrinx, which would replace a part of MANTRA to work with a data communication framework at Dow plants.

51.     However, on information and belief, years before January 2017 Dow had already been developing Syrinx as a complete replacement to MANTRA without ControlSoft's knowledge or permission.

52.     Dow developed Syrinx as a direct replacement for MANTRA in its Dow's plants and those of its licensees.  The ControlSoft employees assigned to work on Syrinx, on a contract basis, worked on MANTRA at ControlSoft and had extensive familiarity with MANTRA. Unbeknownst to ControlSoft at the time, on information and belief, Dow exploited this familiarity

11

to develop a direct replacement for MANTRA. On information and belief, Dow instructed the ControlSoft employees contracted to work on Syrinx not to reveal the true nature of their work at Dow to ControlSoft.

53.     In February 2019, Thomas informed ControlSoft he planned to substitute Syrinx for MANTRA in all of Dow's new APC projects.  At the time, Thomas informed ControlSoft that Dow would continue existing maintenance agreements with ControlSoft for all existing MANTRA installations.  However, Dow and Univation would not install MANTRA at any new plants that licensed Dow's UNIPOL process, cutting ControlSoft off from this Dow-controlled internal market.

54.     Dow began rolling out Syrinx in place of MANTRA in January 2020.

55.     In December 2020, ControlSoft first learned that, rather than developing Syrinx from the ground up, Dow had slavishly copied elements of ControlSoft's MANTRA computer program that are unique in the industry to MANTRA.

56.     For example, the "look and feel" of Syrinx's user interface is nearly identical to MANTRA's.

57.     In addition, the "control blocks" in Syrinx are identical, or nearly identical, to those in MANTRA. Control blocks are elements generated by the MANTRA computer program, partially manifested in a user interface, that, when manipulated by plant engineers, provide a visual programming interface to permit them to configure MANTRA to accept inputs and generate outputs to control plant manufacturing processes.

58.     It is common for process control software to use control blocks, but there is a great deal of creativity and original expression in *how* software designers implement control blocks in their products. When control blocks from different process control software are compared, even

control blocks with superficially similar names and functions can be—and almost always are—designed and implemented very differently.

59.     For instance, many APC systems have a "counter" control block, i.e., a control block that in some form or fashion permits the software to count events defined by the user. However, though "counter" control blocks from competing APCs are designed to accomplish similar tasks, their actual implementation varies greatly. The below comparison illustrates the differences in implementation between "counter" control blocks from several APCs that compete with MANTRA, namely, Emerson Ovation, General Electric Mark VIe, and ABB Infi90:

ControlSoft MANTRA
- Utilizes an up/down counter
- Utilizes a configurable edge selection, allowing the user to decide whether to count ascending changes in value (leading edge), descending changes in value (trailing edge), or both
- Utilizes separate "count up" and "count down" inputs; lacks a control register for count direction

Emerson Ovation
- Utilizes an up/down counter
- Does not permit the user to configure edge selection
- Utilizes a single count input with a configurable register to indicate count direction (up or down)

General Electric Mark V
- Utilizes an up counter, but the down counter is incorporated into a separate control block
- Counts on a leading edge only
- Does not utilize a count direction control because the system utilizes separate control blocks for counting up and counting down

ABB Infi90
- Utilizes an up/down counter
- Counts on a leading edge only
- Utilizes separate "count up" and "count down" inputs

13

60.     In sum, even for a control block as basic and ubiquitous in APC software as a "counter," there is substantial creativity and expression entailed in designing and coding a "counter" control block.

61.     However, although the "counter" control block for MANTRA is significantly different from the "counter" control block on competing APCs, the "counter" control block for Syrinx is *nearly identical* to that in MANTRA.

62.     The "counter" control block is only one of dozens of control blocks that Syrinx copied exactly, or nearly exactly, from MANTRA. Many of the copied control blocks are unique to Mantra and not found elsewhere in the industry.  As compared to MANTRA, nearly all of Syrinx's control blocks have the same names as those in MANTRA, those control blocks function in the exact same way (with few exceptions), and the control blocks use the same variable definitions. There are scores of APCs on the market, and no two are as similar as MANTRA and Syrinx. In sum, when developing Syrinx, Dow "retain[ed] the common blocks and file input/output to the greatest extent possible [as] within the MANTRA environment."

63.     On information and belief, Dow copied substantial portions of the software architecture and design of MANTRA in creating Syrinx, and otherwise improperly used ControlSoft's confidential information to develop Syrinx. It is not credible that Dow independently developed Syrinx without misusing ControlSoft's confidential information and intellectual property. Dow's unlawful conduct is evidenced by: (a) the striking and wide-ranging similarities between Syrinx and MANTRA; (b) the speed with which Dow "developed" Syrinx; and (c) the fact that Dow had ample exposure to ControlSoft's MANTRA software design and architecture, and confidential information that would have permitted Dow to quickly, if improperly, replicate MANTRA.

14

14159703.2

64.    Dow's unlawful copying of MANTRA and misuse of ControlSoft's confidential information unfairly afforded it competitive advantages it would not otherwise have had. Dow undoubtedly saved costs and time during the development of Syrinx by copying MANTRA and misusing ControlSoft's confidential information. In addition, Dow's unlawful copying and misuse enabled it to roll out its Syrinx software without having to re-train any employees, and without undertaking effort for necessary re-engineering of already deployed APC systems, because Syrinx was so similar to MANTRA that employees could seamlessly switch between the two platforms.

65.    In addition to installing Syrinx at Dow-operated facilities, Dow subsidiary Univation, with Dow's knowledge and direction, in cooperation with Atlas has been making copies of Syrinx and installing Syrinx in facilities operated by third-party licensees of Dow's UNIPOL process.  Prior to the development of Syrinx, Univation had been installing MANTRA in licensee manufacturing facilities.   Accordingly, the licensee installations of Syrinx directly replace MANTRA, cutting ControlSoft off from an important market that is controlled entirely by Dow and Univation.

66.    ControlSoft has been seriously harmed by Dow's breaches of contract, misappropriation of ControlSoft's confidential information, and infringement of ControlSoft's copyrighted code and user interface. Dow's unlawful behavior has deprived ControlSoft of license fees and associated maintenance and service contracts it would otherwise have earned from Dow for use of its MANTRA product. In addition, Dow has supplied its Syrinx software to its own licensees, who otherwise would have purchased a license from ControlSoft for MANTRA, and Dow has therefore unlawfully deprived ControlSoft of third-party license fees and service contracts as well.

14159703.2

## Count I – Breach of Contract (EULA)

67.     ControlSoft incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

68.     The EULA is a valid and enforceable contract.

69.     ControlSoft substantially performed its obligations to Dow under the EULA.

70.     Dow breached the EULA by, on information and belief, copying substantial portions of the MANTRA software licensed to it under the EULA, modifying the MANTRA software or separating out its components for use with other software, and decompiling, disassembling, or otherwise reverse engineering MANTRA software and database files.

71.     ControlSoft was damaged, and continues to be damaged, as a result of Dow's breach of the EULA in that it has been deprived of licensing fees it would otherwise have earned from Dow had Dow paid fairly its actual use of MANTRA, and licensing fees it would otherwise have earned from third-parties to whom Dow is now supplying Syrinx.

## Count II – Breach of Contract (NDA)

72.     ControlSoft incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

73.     The NDA is a valid and enforceable contract.

74.     ControlSoft substantially performed its obligations to Dow under the NDA and related MSA.

75.     Dow breached the NDA by, on information and belief, utilizing confidential information provided to Dow during the course of its business relationship with ControlSoft for the purposes of improving MANTRA's operation in Dow plants and those of its licensees and;

16

using that confidential information to develop Syrinx—a software platform that directly replaces MANTRA—without ControlSoft's authorization and not on ControlSoft's behalf.

76.     On information and belief, Dow induced Atlas to hire then ControlSoft employee Cameron McHugh ("McHugh") away from ControlSoft.  While at ControlSoft, McHugh worked on MANTRA and had access to confidential information concerning MANTRA and was under an obligation of confidentiality.  On information and belief, Dow retained Alas Controls to develop Syrinx, and induced Atlas Controls to put McHugh in the same role in developing Syrinx as when he was an employee at ControlSoft working on MANTRA, thereby improperly circumventing Dow's obligations under the NDA.

77.     ControlSoft was damaged, and continues to be damaged, by Dow's breach of the NDA in that Dow has used ControlSoft's confidential information to launch Syrinx, a product that directly replaces MANTRA.

## Count III – Misappropriation of Trade Secrets in Violation of Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61 *et seq*.

78.     ControlSoft incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

79.     ControlSoft's code, architecture, and database structure for the MANTRA program, as well as the information and know-how concerning how to program for MANTRA (the "Trade Secrets"), were not generally known to or readily ascertainable to MANTRA's actual and potential competitors, and ControlSoft derived economic value from the Trade Secrets not being so known or ascertainable.

80.     ControlSoft took reasonable efforts to maintain the secrecy of its Trade Secrets, including by refusing to disclose the Trade Secrets to third-parties like Dow unless such third-

parties executed a non-disclosure agreement like the NDA and/or are bound by the terms of the EULA.  ControlSoft also disclosed information under NDAs on a need-to-know basis.

81.     Dow acquired ControlSoft's Trade Secretes via a confidential relationship, namely, a business relationship in which Dow was contractually required to maintain the confidentiality of ControlSoft's Trade Secrets and use those Trade Secrets only with ControlSoft's consent and on ControlSoft's behalf.

82.     ControlSoft maintained other confidential information in complete secrecy.  For example, gaining access to the MANTRA project MPJ database files would reveal the data structures residing therein.  ControlSoft locked those database files with access controls and, notwithstanding any NDAs, has not provided the password to any MANTRA licensees.

83.     On information and belief, to facilitate copying of certain MANTRA programming elements, and conversion of Dow MANTRA project MPJ database files to Syrinx, Dow obtained access to one or more MANTRA project MPJ database files through improper means.  On information and belief, Dow must have known its access to such database files comprised improper means, because Dow would have had to circumvent the access controls imposed by ControlSoft without ControlSoft's authorization.

84.     Dow used ControlSoft's Trade Secrets without ControlSoft's express or implied consent to develop Syrinx as a complete replacement to MANTRA without ControlSoft's authorization.

85.     On information and belief, Dow has disclosed ControlSoft's Trade Secrets without ControlSoft's express or implied consent by causing Syrinx project database files to be stored in an unprotected format at their own facilities and those of their UNIPOL licensees.

86. At the time Dow did so, Dow knew it was under a duty to use the Trade Secrets only with ControlSoft's authorization and on ControlSoft's behalf.

87. Dow's use of the Trade Secrets to develop Syrinx was not on ControlSoft's behalf.

88. Dow's unauthorized and improper use of ControlSoft's Trade Secrets to develop Syrinx was willful and malicious.

89. ControlSoft was harmed as a direct and proximate result of Dow's unauthorized use of ControlSoft's Trade Secrets.

90. Dow was unjustly enriched as a result of its unauthorized and improper use of ControlSoft's Trade Secrets.

91. ControlSoft is entitled to damages that include both its actual losses and any unjust enrichment of Dow caused by the misappropriation not taken into account in computing ControlSoft's actual loss. Ohio Rev. Code § 1333.63(A)

92. ControlSoft is also entitled to punitive damages in an amount up to three times its damages and its attorney's fees as Dow's misappropriation was willful and malicious. Ohio Rev. Code §§ 1333.63(B) and 1333.64(C).

93. Upon information and belief, unless enjoined by this Court, Dow will continue profiting from its misappropriation of ControlSoft's MANTRA computer program and its related Trade Secrets protectable under Ohio law.

94. ControlSoft is further entitled to injunctive relief pursuant to Ohio Rev. Code § 1333.62.

19

**Count IV – Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.**

95.     ControlSoft incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

96.     The Trade Secrets were related to a product or service used in, or intended for use in, interstate commerce.

97.     On information and belief, Dow's misappropriation of the Trade Secrets began on or after May 11, 2016, and Dow's use of the Trade Secrets continued after this date.

98.     Dow was unjustly enriched as a result of its unauthorized and improper use of ControlSoft's Trade Secrets.

99.     ControlSoft is entitled to damages that include both its actual losses and any unjust enrichment of Dow caused by the misappropriation not taken into account in computing ControlSoft's actual loss. 18 U.S.C. § 1836(b)(3)(B).

100.    Upon information and belief, unless enjoined by this Court, Dow will continue profiting from its misappropriation of ControlSoft's MANTRA computer program and its related Trade Secrets protectable under the Defend Trade Secrets Act.

101.    ControlSoft is further entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

**Count V – Direct Copyright Infringement by Dow**

102.    ControlSoft incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

14159703.2

103.    ControlSoft owns a valid copyright in its MANTRA computer program, including in the source code for MANTRA, its internal architecture and organization, and its user interface (the "Copyrighted Materials").

104.    The Copyrighted Materials are protected by two copyright registrations: 1) U.S. Copyright Registration Number TX 9-162-665, Title: MANTRA Advanced Process Control System, which registers the source code (a true and correct copy of the Certificate of Registration is attached hereto as Exhibit E); and 2) U.S. Copyright Registration Number TX 9-176-483, Title: MANTRA Advanced Process Control System Function Block Reference Manual, which covers certain programming elements generated by the computer program, including the logic blocks as set forth above (a true and correct copy of the Certificate of Registration is attached hereto as Exhibit F).

105.    Dow had access to the MANTRA Advanced Process Control System and the user interface it generated.  Dow further had access to the MANTRA Advanced Process Control System Function Block Reference Manual, which includes descriptions of original elements generated by the MANTRA Advanced Process Control System program.

106.    Dow violated ControlSoft's exclusive rights concerning protectable elements of ControlSoft's Copyrighted Materials pursuant to 17 U.S.C. §§106(1) and(2) by: (a) copying the MANTRA user interface, including those portions of the control blocks manifested in the user interface, nearly exactly; (b) on information and belief copying MANTRA's internal architecture and organization; (c) creating a derivative work of MANTRA, namely, Syrinx; and (d) making copies of Syrinx, thereby making copies of the Copyrighted Materials.

107.    To the extent that the copied elements have any differences from MANTRA, such differences are insubstantial.

14159703.2

108.    Dow's unlawful copying and modification of the Copyrighted Materials was and continues to be willful.

109.    ControlSoft has been harmed by Dow's unlawful copying, and modification of the Copyrighted Materials by being deprived of licensing and maintenance (service contract) fees it would otherwise have earned from Dow, and licensing fees it would otherwise have earned from third-parties to whom Dow and/or Univation is now supplying Syrinx in place of MANTRA.

110.    Dow has been unjustly enriched by its unlawful copying and modification of the Copyrighted Materials, in that it has acquired substantial profits from its licensees for licensing to them unlawfully copied portions of the Copyrighted Materials, and in that by copying the Copyrighted Materials, Dow saved substantial development and training costs, as well as engineering costs for customer site deployed solutions, thereby increasing its profits.

111.    As a result of Dow's infringement, ControlSoft is entitled to recover damages, which include its losses and any and all profits Dow has made as a result of its wrongful conduct pursuant to 17 U.S.C. § 504.

112.    Upon information and belief, unless enjoined by this Court, Dow will continue infringing upon and otherwise profiting from its unauthorized infringement of ControlSoft's MANTRA computer program.

113.    ControlSoft Inc. is also entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503.

## Count VI – Contributory Copyright Infringement by Dow

114.    ControlSoft incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

115.     On information and belief, Univation and Atlas violated ControlSoft's exclusive rights concerning protectable elements of ControlSoft's Copyrighted Materials pursuant to 17 U.S.C. §§106(1) and (3) by: (a) making copies of Syrinx, thereby making copies of the Copyrighted Materials; and (b) distributing copies of Syrinx, thereby distributing the Copyrighted Materials.

116.     The unlawful copying and distribution of the Copyrighted Materials by Univation and Atlas were undertaken with the knowledge of Dow.

117.     The unlawful copying and distribution of the Copyrighted Materials by Univation and Atlas were undertaken at the direction of Dow, and Dow materially contributed to these infringing acts.

118.     ControlSoft has been harmed by the unlawful copying and distribution of the Copyrighted Materials by Univation and Atlas by being deprived of licensing and maintenance (service contract) fees it would otherwise have earned from Dow, and licensing fees it would otherwise have earned from third-parties to whom Dow is now supplying Syrinx.

119.     Dow has been unjustly enriched by Univation and Atlas's unlawful copying and distribution of the Copyrighted Materials, in that it has acquired substantial profits from its licensees for licensing to them unlawfully copied portions of the Copyrighted Materials.

## **Count VII – Unjust Enrichment**

120.     ControlSoft incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

121.     MANTRA, and its Dow specific derivatives, advantageously allowed Dow to migrate its internal APC to a Windows NT environment successfully.

122.    Dow recognized this benefit, and sought to replicate it utilizing the information ControlSoft had shared with Dow during their ongoing business relationship, this replication is embodied in Syrinx.

123.    As a result of Dow's conduct it has continued to exploit the functionality of MANTRA without paying licensing fees it would otherwise have fairly paid for its actual use of MANTRA, and licensing fees it would otherwise have paid for third-parties to whom Dow is now supplying Syrinx.

## Prayer For Relief

Plaintiff prays that this Court enter judgment against Defendants as follows:

A.    That Defendants be adjudged to have breached the contract of Count I by: copying substantial portions of the MANTRA software licensed to it under the EULA, modifying the MANTRA software or separating out its components for use with other software, and decompiling, disassembling, or otherwise reverse engineering MANTRA software and related files;

B.    That Defendants be adjudged to have breached the contract of Count II by: utilizing confidential information provided to Dow during the course of its business relationship with ControlSoft for the purposes of improving MANTRA's operation in Dow plants and those of its licensees and; using that confidential information to develop Syrinx—a software platform that directly replaces MANTRA—without ControlSoft's authorization and not on ControlSoft's behalf;

C.    That Defendants be adjudged to have violated Ohio Rev. Code § 1333.61 *et seq.* as described in Count III by misappropriating Plaintiff's trade secrets;

D.    That Defendants be adjudged to have violated U.S.C. § 1836 *et seq.* as described in Count IV by misappropriating Plaintiff's trade secrets;

24

E.     That Defendants be adjudged to have directly infringed Plaintiff's copyrights as described in Count V by: (a) copying the MANTRA user interface, including those portions of the control blocks manifested in the user interface, nearly exactly; (b) on information and belief copying MANTRA's internal architecture and organization; (c) creating a derivative work of MANTRA, namely, Syrinx; and (d) making copies of Syrinx, thereby making copies of the Copyrighted Materials;

F.      That Defendants be adjudged to have contributorily infringed Plaintiff's copyrights as described in Count VI by: inducing and directing Univation and Atlas into (a) making copies of Syrinx, thereby making copies of the Copyrighted Materials; and (b) distributing copies of Syrinx, thereby making distributing the Copyrighted Materials;

G.     That Defendants be adjudged to have been unjustly enriched as described in Count VII;

H.     Plaintiff be awarded all statutory damages, compensatory damages, Defendant's profits,  punitive damages, and restitution to which it is entitled, in an amount to  be proved at trial for the damages caused by: Defendant's breaches of contract, Defendant's trade secret misappropriation under Ohio Revised Code §§ 1331.61 *et seq.* and U.S.C. § 1836 *et seq.,* Defendant's copyright infringement, and Defendant's unjust enrichment.

I.     That Plaintiff be awarded its costs and reasonable attorney's fees associated with the prosecution of this action;

J.     A preliminary and permanent injunction enjoining Defendant, its agents and/or principals, successors and assigns, and all persons in active concert of participation with any of them from directly or indirectly infringing ControlSoft's copyrights in its MANTRA computer program, or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise,

14159703.2

reproduce, develop, or manufacture any works derived or copied from ControlSoft's MANTRA computer program, or to participate or assist in any such activity.

       K.     A preliminary and permanent injunction enjoining Defendant, its agents and/or principals, successors and assigns, and all persons in active concert of participation with any of them from further use, sale, licensing, distribution, or copying of Dow's Syrinx software, and any other associated or derivative works of Syrinx, that infringe upon Plaintiff's copyrights;

       L.     The Plaintiff be granted punitive damages for Defendants' malicious acts;

       M.     That Plaintiff be granted pre-judgment and post-judgment interest;

       N.     That Plaintiff be granted such further relief as the Court may deem just.

November 7, 2022

OF COUNSEL:
HAHN LOESER & PARKS LLP

Respectfully submitted,

/s/ Nathan B. Webb
Nathan B. Webb (0084506)
nwebb@hahnlaw.com
Gregory A. Thompson (0089297)
gthomspson@hahnlaw.com
Ethan J. Peters (0099041)
epeters@hahnlaw.com
Walter J. Kawula (*pro hac vice* application forthcoming)
wkawula@hahnlaw.com
200 Public Square, Suite 2800
Cleveland, OH 44114-2316
Phone:  216.621.0150

*Attorneys for Plaintiff ControlSoft, Inc.*

14159703.2

## **Jury Trial Demand**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all triable issues of fact.

14159703.2